UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEW YORK COMMUNITIES FOR CHANGE
and LINDA BERGNES, et al.,

                      Plaintiffs,

           v.

NEW YORK STATE UNIFIED COURT
SYSTEM/OFFICE OF COURT
ADMINISTRATION,

                      Defendant.

No. 22-CV-4298 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiffs—the non-profit organization New York Communities for Change ("NYCC") and twenty-nine court interpreters employed in the New York State court system (the "Interpreter Plaintiffs") (collectively, "Plaintiffs")—bring this action against the New York State Unified Court System/Office of Court Administration ("Defendant"), a New York State agency, alleging discriminatory pay practices on the basis of national origin in violation of the Equal Protection Clause of the Fourteenth Amendment and the New York State Human Rights Law. Defendant has moved to dismiss the First Amended Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

    Under well-established principles of state sovereign immunity, a federal court may not hear a suit brought by any person against a state absent a valid congressional abrogation of immunity or the state's consent. *See, e.g., Allen v. Cooper*, 140 S. Ct. 994, 1000–01 (2020). Because those conditions are not present here, Plaintiffs' claims are barred by New York's sovereign immunity under the Eleventh Amendment, and the Complaint must be dismissed in its entirety.

**FACTUAL BACKGROUND**

Plaintiff NYCC is a non-profit social justice organization engaged in housing, climate justice, civil rights, and employment organizing. Compl. ¶ 3. The Interpreter Plaintiffs are each employed as court interpreters for the New York State Unified Court System to assist court users who speak Spanish, Mandarin, Cantonese, or Polish, or who are deaf, *id*. ¶¶ 4–32. Twenty-two of the Interpreter Plaintiffs are "of Hispanic national origin," two are "of Chinese national origin," one is "of Haitian and Dominican national origin," and one is "of Polish national origin;" the national origins of the remaining three Plaintiffs are not identified in the Complaint. *Id*. Defendant New York State Unified Court System is an administrative arm of the Office of Court Administration, *id*. ¶ 33, and employs "approximately 246 full- and part-time court interpreters in 20 foreign languages and American Sign Language," *id*. ¶ 41.

Plaintiffs allege that New York State court interpreters, who are predominantly non-native English speakers, are significantly underpaid in comparison with other courtroom personnel in the New York court system—in particular, court reporters—and that those pay disparities constitute unlawful discrimination on the basis of national origin. According to the Complaint, court interpreters are "highly skilled professionals," who, among other things:

> must master both working languages' cultural context and be able to prepare for specialized topics rapidly and routinely, . . . [and] interact with people with high levels of education and corresponding high levels of formal speech (e.g., judges, attorneys, and expert witnesses) as well as people with little to no formal education and corresponding highly informal ways of speaking.

*Id*. ¶¶ 94, 64. Plaintiffs allege that "[c]ourt interpreting is a more demanding profession than court reporting due to the difference between the phonetic-bound translation performed by court reporters as compared with the culture-bound translation performed by court interpreters as well as the necessity of working in two languages rather than one." *Id*. ¶ 47. Moreover, Plaintiffs point

to the lower passing rate among "Spanish court interpreters" compared with court reporter candidates on the United Court System's civil service exam as indicating that "court interpreting is a more challenging profession than court reporting." *Id.* ¶ 59. The Complaint alleges that "industry surveys show that at least 76% of interpreters surveyed are […] college graduates, post-graduates or doctoral graduates." *Id.* ¶ 47.

Nonetheless, Plaintiffs allege, New York State court interpreters are paid significantly less than court reporters. "Despite similarities in the nature of the job and skills required" between court reporters and court interpreters, "a non-supervisory court interpreter in the [New York State court system] earns 26% less than a non-supervisory court reporter at the entry level and 35% less at the top of the salary range." *Id.* ¶ 46. By comparison, court interpreters in the federal courts are better paid than court reporters, and in the federal courts "maximum salaries for interpreters is 49% higher than top salaries for reporters." *Id.* In the New York court system, by contrast, court interpreters "make 35% less than Court Reporters in maximum compensation." *Id.* ¶ 47.

Plaintiffs allege that the pay discrepancies are "based on a discriminatory attitude towards court interpreters—because they provide a service which is not in English, and because those they serve are non-English speakers or people with disabilities." *Id.* ¶ 93. According to the Complaint, court interpreters are subjected to demeaning treatment during their employment: Plaintiffs allege, for example, that "in May 2021, a judge referred to the court interpreters as 'chattel,'" and that while court reporters and court clerks have desks inside courtrooms and in an office, interpreters are not provided desk space. *Id.* In addition, "many staff interpreters are not provided with court telephone lines and must use their own cellphones for court business and operations without receiving reimbursement for their expenses." *Id*. The Complaint also cites a "2020 report on racial bias in the New York State Unified Court System" which described a sign on a desk outside a

courtroom that read "Interpreter Sits Here" and was "accompanied by an illustration of a Mexican person sleeping … under a sombrero." *Id.* ¶ 95. Another court sign allegedly read "No Interpreters Allowed," and a court notice board included a "caricature of an interpreter as part of 'Misfit Island,' meant as an offensive reference to the Island of Misfit Toys." *Id*.

Plaintiffs allege that the burdens of such workplace discrimination and discrepancies in pay do not fall on the interpreters alone. Rather, they allege that, as a result of such treatment, "non-English speaking court users are denied full and equal access to the court system." *Id.* ¶ 1. According to the Complaint, one-sixth of New York City households contain no English-proficient adults over the age of 14, indicating that "a huge group of people … depend[] on the court system's ability to hire and maintain a large staff of qualified court interpreters." *Id*. ¶ 84. Nonetheless, "the number of staff interpreters employed by [Defendant] has dropped steadily, from 335 in 2009 … to 246 in 2014." *Id.* ¶ 85. The personnel decline has allegedly dramatically increased wait times, such that "attorneys and their clients sometime have to wait hours, or longer, for an interpreter to arrive," and "postponements of cases … because of a lack of interpretation services are not uncommon." *Id.* ¶ 85.

## PROCEDURAL BACKGROUND

Interpreter Plaintiffs brought this action on May 25, 2022, alleging violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq*.; the New York State Human Rights Law, N.Y. Exec. Law §§ 296(1) and (2) ("NYSHRL"); and New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107(1)(a) and (4)(a)(1)(a). Dkt. 1, Compl. ¶¶ 92–94. On August 24, 2022, Defendant moved to dismiss. On October 5, 2022, Plaintiffs filed the First Amended Complaint, adding NYCC as a Plaintiff, removing their claims under Title VI and the New York City Human Rights Law, and adding two causes of action alleging violations of the Equal

4

Protection Clause of the Fourteenth Amendment. Dkt. 19, Compl. ¶¶ 98, 100.[1] In the instant Complaint, Plaintiffs seek backpay for wages and benefits, emotional distress damages, and an order "[a]djusting the salaries of the Interpreter Plaintiffs and members of their class to a pay level commensurate with the knowledge, skills, and abilities which they bring to the job." *Id.* at 42.

Defendant moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that NYCC lacks standing and that the Interpreter Plaintiffs fail to state a claim under the Equal Protection Clause and the NYSHRL. Defendant did not initially argue, however, that Plaintiffs' claims are barred by sovereign immunity under the Eleventh Amendment.[2] On May 18, 2023, after Defendant's motion was fully briefed, the Court issued an order directing the parties to file supplemental letter briefs addressing whether Plaintiffs' claims are barred by Eleventh Amendment immunity. In its letter filed on May 26, 2023, Defendant argued for the first time that Plaintiffs' claims are in fact barred pursuant to the Eleventh Amendment. Dkt. 33. In their letter

---

[1] In particular, the Complaint asserts that Plaintiffs bring this action pursuant to the NYSHRL and 42 U.S.C. § 1983. *See* Compl. ¶ 2 (stating that "[t]his Court's jurisdiction is invoked pursuant to 28 USC § 1331 and 42 USC § 1983"). In their opposition to the motion to dismiss, however, Plaintiffs assert that "NYCC's claim … is not pled as a Section 1983 claim," Opp. at 37, and that the "legal basis for seeking court relief is the Equal Protection clause of the Fourteenth Amendment, and the New York State Human Rights Law," *id.* at 1, citing cases brought under the Equal Protection Clause or 42 U.S.C. § 1981. At oral argument, Plaintiffs' counsel asserted that this case is brought directly under the Fourteenth Amendment, but also noted that it "could be" brought under Section 1983 as well.

[2] On December 30, 2022—a day after their response was due—Plaintiffs filed a 44-page brief in opposition to the motion to dismiss without seeking permission to exceed the 25-page limit pursuant to Rule 4 of this Court's Individual Rules & Practices in Civil Cases. In its reply brief, Defendant argues that the Court should therefore deem the motion to dismiss unopposed, or in the alternative, consider only the portions of Plaintiffs' brief within the page limit. Def. Reply at 7. Given that the Court's decision on the motion to dismiss does not rely on the arguments made in the additional pages of Plaintiffs' brief, that request is denied. *See Nat'l Grid Corp. v. Brand Energy Servs.*, No. 13 Civ. (DRH) (ARL), 2017 WL 1194499, at *10 n.7 (E.D.N.Y. Mar. 30, 2017) (denying defendants' request to strike excess pages from plaintiff's memorandum where Court decided motion on grounds not raised in excess pages); *see also Catz v. Precision Glob. Consulting*, No. 19-CV-7499 (ER), 2021 WL 1600097, at *5 (S.D.N.Y. Apr. 23, 2021) (denying defendants' motion to strike plaintiff's overlong brief where defendants were not prejudiced). To the extent Plaintiffs seek to amend their Complaint, however, they are reminded that they must comply with this Court's rules going forward.

filed on the same day, Plaintiffs urged that the Eleventh Amendment "should not bar this lawsuit," and asserted that if state sovereign immunity "has any application, it would be as a bar to back pay and [] emotional distress damages." Dkt. 34.

## STANDARD OF REVIEW

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). The principle of state sovereign immunity limits a federal court's jurisdiction over suits against states. *See Alden v. Maine*, 527 U.S. 706, 730 (1999). As such, the Second Circuit has held that "[w]hether a federal court has subject matter jurisdiction [pursuant to the Eleventh Amendment] is a question that may be raised at any time by the court *sua sponte*." *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) (concluding that district court properly considered whether defendants had sovereign immunity, thus depriving the court of subject matter jurisdiction); *see Atl. Healthcare Benefits Tr. V. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction."). Absent a state's waiver of its sovereign immunity or congressional abrogation, a district court "lack[s] subject matter jurisdiction" to consider claims against states. *Close v. New York*, 125 F.3d 31, 38–39 (2d Cir. 1997).

## DISCUSSION

I.  **Plaintiffs' Claims Are Precluded by the Eleventh Amendment**

Suits against state governments in federal court are generally prohibited by the Eleventh Amendment. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 447–48 (2d Cir. 1999). That prohibition applies regardless of whether a plaintiff seeks injunctive or monetary

relief, *see Tornheim v. New York State Senate*, 115 F. App'x 482, 483 (2d Cir. 2004) (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (*per curiam*)), and it extends to suits against arms and agents of the state "such as state agencies," *Walker v. City of Waterbury*, 253 F. App'x 58, 60 (2d Cir. 2007). Eleventh Amendment immunity is not absolute, however, and a state government or agency "may be divested of immunity and haled into federal court in one of two ways: (1) Congress may abrogate the sovereign immunity through a statutory enactment […] or (2) a state may waive its immunity and agree to be sued in federal court." *Richardson*, 180 F.3d at 448 (2d Cir. 1999) (internal citations omitted).

    Here, Congress has not abrogated Eleventh Amendment immunity with respect to any of Plaintiffs' possible causes of action, nor has New York State waived its immunity with respect to the same. The Supreme Court has made clear that Congress did not intend to override states' sovereign immunity on Section 1983 claims, *see Quern v. Jordan*, 440 U.S. 332, 340–42 (1979); *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990), and "it is well-established that New York has not consented to § 1983 suits in federal court," *Mamot v. Bd. Of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (citing *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir.1977)) (affirming dismissal of Section 1983 claims against New York State agencies on Eleventh Amendment grounds). Congress also did not abrogate states' sovereign immunity for 42 U.S.C. § 1981 suits, nor has New York waived immunity for those claims. *See Dimps v. Taconic Correctional Facility*, 802 F. App'x 601, 603 (2d Cir. 2020).[3] Insofar as Plaintiffs seek to bring claims directly under the Equal Protection Clause, the Second Circuit has "squarely held that Section 1 [of the Fourteenth Amendment] claims for damages are

---

[3] Any Section 1981 claim fails for the additional reason that Section 1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018).

7

barred by the Eleventh Amendment," and that a plaintiff bringing a claim for injunctive relief pursuant to Section 1 "must name as defendant a state official rather than the state or a state agency directly." *Santiago v. N.Y. Dep't of Corr. Servs.,* 945 F.2d 25, 32 (2d Cir.1991). Finally, "New York State has not consented to be sued in federal court under the [New York State Human Rights Law]." *Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (affirming district court's holding that NYSHRL claims against New York State was barred by sovereign immunity); *see Purdie v. City Univ. of N.Y.,* No. 13–CV–6423, 2015 WL 129552, at *4 (S.D.N.Y. Jan. 8, 2015) (same).

None of Plaintiffs' causes of action, therefore, can proceed against any "state agents and state instrumentalities" where New York "is the real, substantial party in interest." *Henny v. New York State*, 842 F. Supp. 2d 530, 544 (S.D.N.Y. 2012). The Complaint names just one Defendant, the New York State Unified Court System, which is "unquestionably an 'arm of the State'" of New York. *Gollomp v. Spitzer,* 568 F.3d 355, 368 (2d Cir.2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. Of Educ.,* 466 F.3d 232, 236 (2d Cir.2006)); *Canales–Jacobs,* 640 F.Supp.2d at 488 ("The Unified Court System of the State of New York is the Judicial Branch of New York State Government … The Office of Court Administration is the administrative office for the Unified Court System.") (citing N.Y. Judiciary Law § 212(1)(b)). As such, federal courts have repeatedly barred claims against the Unified Court System and the Office of Court Administration. *See, e.g., Kelly v. New York State Unified Ct. Sys.*, 2022 WL 1210665, at *2 (2d Cir. Apr. 25, 2022); *Segal v. New York State Unified Ct. Sys.*, No. 21-CV-2545 (LTS), 2021 WL 1841768, at *3 (S.D.N.Y. May 7, 2021); *Zahl v. Kosovsky*, No. 08-CV-8308 (LTS), 2011 WL 779784, at *1 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012).

Notwithstanding these well-established principles of state sovereign immunity, Plaintiffs argue in their May 26th supplemental letter that this suit is not barred by the Eleventh Amendment.

They premise that assertion largely on *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–56 (1976), where the Supreme Court explained that Congress may pass legislation pursuant to its enforcement power under Section 5 of the Fourteenth Amendment that would permit suits against states for retroactive damages. Indeed, Congress has validly abrogated state sovereign immunity pursuant to Section 5 with respect to other statues, including the statute at issue in *Fitzpatrick*—namely, Title VII of the Civil Rights Act of 1964. *Id.* But *Fitzpatrick* does nothing to support Plaintiffs' assertion that Eleventh Amendment immunity is absent here, as Congress has not abrogated state sovereign immunity for any of the possible causes of action at issue. *See infra* at 7–8.

Finally, in an attempt to maintain their claims for injunctive relief, Plaintiffs rely in their supplemental letter on *Ex parte Young*, 209 U.S. 123 (1908), which provides a well-known exception to state sovereign immunity such that "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *In re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir.2007). But such claims must name a state official who has "some connection with the enforcement of the act" as a defendant, not the state or state agency alone, as is the case here. *Loren v. Levy*, No. 00-CV-7687 (DC), 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003), *aff'd*, 120 F. App'x 393 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. at 157). Because Plaintiffs have "sued the [Unified Court System] in lieu of individual officers," the doctrine of *Ex parte Young* "allowing prospective injunctive relief … does not apply." *Kelly*, 2022 WL 1210665, at *2; *see Santiago*, 945 F.2d at 32 (affirming dismissal of claim for equitable relief where plaintiff had "not used this *Ex parte Young* 'fiction'" in bringing his suit).

In sum, Plaintiffs' assertion that their claims are not barred by the Eleventh Amendment is meritless. Because the Court lacks jurisdiction to entertain Plaintiffs' claims both for monetary and injunctive relief, the Complaint must be dismissed.[4]

## II. Leave to Amend

Rule 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While this is a "permissive standard," *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), it is ultimately "within the sound discretion of the court whether to grant leave to amend," *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). Where "the proposed amendment would be futile," courts within this district will deny leave to amend. *See Brown v. Kellogg Sales Co.*, No. 20-CV-7283 (ALC), 2022 WL 992627, at *6 (S.D.N.Y. Mar. 31, 2022); *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).

Plaintiffs have not formally sought leave to amend to add a state official as a defendant. It would thus be well within the Court's discretion to deny Plaintiff such leave. *See Palmer v. New York State Off. of Ct. Admin.*, 526 F. App'x 97, 99 (2d Cir. 2013) (affirming district court's dismissal on Eleventh Amendment grounds and holding that "[s]ince [plaintiff] never asked the district court for leave to amend her Second Amended Complaint in order to add a state official as a defendant (and never identified the person she would sue), the district court did not abuse its discretion in denying leave to do so"). "Ordinarily," however, "a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint."

---

[4] Defendant's failure to raise the issue of Eleventh Amendment in its motion to dismiss does not constitute a waiver, *see Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 449 (2d Cir. 1999) (state agency "did not waive its Eleventh Amendment immunity by failing to raise the defense" before moving for summary judgment), and the Court properly "raise[s] it *sua sponte* because it affects [its] subject matter jurisdiction," *Atl. Healthcare Benefits Tr.* 2 F.3d at 4.

*Obra Pia Ltd. v. Seagrape Inv'rs LLC*, 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021). This is especially true on the Court's first ruling on a motion to dismiss. *See Loreley*, 797 F.3d at 190 ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Accordingly, the Court will grant Plaintiffs one final opportunity to amend the Complaint.

## CONCLUSION

For the foregoing reasons, the Complaint is dismissed in its entirety. Plaintiffs shall have one additional opportunity to amend the Complaint within thirty days, provided they have a good faith basis to do so. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 22.

SO ORDERED.

Dated:    June 28, 2023
          New York, New York

_____
Ronnie Abrams
United States District Judge